Good afternoon, your honors. Andrea Christensen Brown of the state of Michigan appearing on behalf of the respondent warden. I'd like to reserve three minutes for rebuttal with your permission. You may please proceed. Okay, the Michigan Court of Appeals determined in this case that there was no violation of the confrontation clause for two reasons. First, because the trial court correctly found that Carl Cooper was unavailable to testify and also that any error stemming from that decision was ultimately harmless. The question before this court we submit is fairly straightforward. Was the Michigan Court of Appeals so unreasonable in its adjudication of that claim so as to warrant the extreme remedy of habeas relief, a remedy that is so rare that it's reserved for the most egregious of errors? This court is very aware of the high level of deference afforded to state determinations under EDPA cases, so I won't belabor that point here. Let me start you out with the easy one, which I think we can dispense and then we can go on to the more interesting one. You argue, as I understand it, according to the following the state court decision that any error here was harmless and essentially the argument is that Mr. Cooper testified only to counts for which the defendant was acquitted. Do I understand that correctly? In part, your honor. I'm happy to expound upon that. Tell me the part I'm wrong. The part where that is what the court of appeals ultimately determined was that he testified to counts that Mr. Moritz was ultimately not convicted of. We actually submit that he contributed testimony to three counts. All right. Because it just seemed to me reading it, he was driving the van from her house back to get another car and that's when the shooting occurred and he testified that the defendant forced Donna into the car along with her son. So that's the kidnapping, right? Yes. And at least one or more felony firearms took place in his presence, probably the assault with a dangerous weapon and carrying the dangerous weapon with unlawful intent. Let's not quibble here. Am I close? Yes, you're close. So that's what I want to know about harmless error. So go ahead and argue whatever you want to argue. Okay. If I can ask, where in the record does it show that really any effort to procure Mr. Cooper's testimony lie? Where does it show in the record the efforts that were taken? In the record, to be blatant, Your Honor, in the record there are none. As to the prosecutor's efforts. Doesn't it have to be something to show that, I mean, I understand there were logistical problems which is kind of opaque and we can't get him here until tomorrow. Right. And I think, at least as a district judge, I think I understand what happened. They had a lunch break. The lawyers went back. The judge told them what he was going to do. The prosecutor probably told the judge what, quote, the problems were. He said, we're going to go ahead. The actual on-the-record objection was quite deferential and mild. Didn't even recite the confrontation clause, if memory serves, but preserved that issue. And, I mean, I just, that's the problem I have quite clearly with, and maybe the two judges too. Okay. So how does that get by? And does the fact that this occurred during the trial, rather than in the cases, other cases where it occurred, you know, the issue came up before trial, at least in terms of unavailability and so forth. Does the fact that this occurred in Medea's race make a difference? I don't think it makes a difference. Right. But that being said, I think that we can all agree that the four corners of the record here leaves a lot to be desired about what occurred in getting Mr. Cooper to trial to testify. So with that being said, I would rely on my brief for those points and to go to the audience. Having said that, there's nothing in the record that shows there was any effort at all. And it seems to me when you say it doesn't matter that this occurred during trial, as opposed to before trial, which are the facts in all of the other cases that have been cited to us, it seems to me you just gave your case away. Well, that's an interesting point, one that, frankly, I hadn't contemplated. I don't think that we need to. You've got to be pretty careful what you say in answers to questions. Lesson learned. You've got to get. Here's the simple fact. All of the cases that I can find, and I'm going to ask your fellow counsel as well, deal with whether reasonable efforts were made when the unavailability of a witness was discovered before trial and presumably there was time to do something about it. Here, the record seems to indicate that everybody thought this guy was going to testify up through the lunch hour, and it was only after lunch that they found out he was unavailable. So is there a case that speaks to the efforts that are required, if any, when a witness becomes unavailable during the trial as opposed to at the advance? Not that I'm aware of. So given that fact, I'd like to retract my answer to that question and say that then that there's no clearly established Supreme Court precedent that this decision could be considered contrary to. I mean, isn't the problem usually the two-step here is that the prosecution or whichever side is going to present him says, well, Your Honor, we were about to call Mr. Cooper, but we can't find him, and we've done such and such. And the judge, you know, thinks about it and makes a ruling, at least for what's on the record here, and I don't know if I'm missing something or if there's extra record evidence about what happened over lunch. The judge says, well, we've only got one witness left. I know who the witness is. I know that he's been picked up. I know we can't get him here today. And I told counsel I intend to proceed, as though my sort of hypothetical motion had kind of been made in chit-chat. Does that seem to be what happened, or is there any other place in the record beyond what I was just – and what I was just reading was from the Court of Appeals, but I think they're quoting the trial court at that point. Yes, Your Honor. I've reviewed the record, and those two to three pages are all we have. But, in effect, it would have been exactly the same as if the prosecution, you know, had done the two-step and stepped back and said, well, Your Honor, as you know, Mr. Cooper is unavailable, and we can't get him here today because he's over in Southgate, and if we want to go ahead with the trial, we can't get him, period. Right. No, answer the question. I think that from those two to three pages of trial transcript that we can make reasonable inferences about what happened over lunch. There were clearly conversations between the court and counsels about his absence and what perhaps could go into getting him there. But in the black-and-white text of the record, we have very little. But reasonable inferences shows us that something happened. Does it make – the judge had advertised to the jury at the outset the case would take until Friday. Yes. This was Wednesday noon, and she has one more witness, and the judge knew from the transcript it was probably 10 or 15 minutes of testimony, and, of course, the defendant testified, but I think before 4 o'clock they adjourned. The case was – I mean, does it make a difference that the judge could have continued it or the prosecutor could have asked for a continuance, or does that not – I mean, quite candidly, I'm very troubled by this. I mean, back in 1979 when I started out this business as a magistrate judge, I would have granted habeas corpus relief without blinking an eye. But, of course, things have changed, okay, since then. Two things. There's the fact that he was cross-examined. I mean, is there any reason to suspect that his testimony was any different – would have been any different? I don't think so on the record. Secondly, is there something about the judge's ability to control and manage his own docket that ought to cut the judge in this case a little more slack? I mean, is that something that might make a difference between the fact that this occurred during trial rather than came up before trial? I mean, it absolutely could. And I think that the record is clear that the judge was controlling his own docket in this case. And the court was obviously wanting to get the trial done with. But the trial court's actions and concerns about its own docket don't actually go to the test and barber, which is prosecutorial efforts and to get the unavailable witness to court. And secondly, whether or not it's the principal evidence against the defendant. So I understand the concerns about the trial court with its own docket, but that's inapplicable to the barber test. Part of that, though, is that there was prior judicial testimony with an opportunity for cross-examination, which here I take it was there to the full degree that there was some actual cross-examination. Yes, Your Honor. Well, the entire examination that happened with Mr. Cooper happened during the preliminary examination. There was a chance for cross-examination. And that's a part of the first prong of the barber test. I would like to- Was there cross-examination during the preliminary examination? Yes, there was. I thought so. Yes, there was. With respect to the length of time of the trial, was it clear that they were going to be able to finish that day? That is, the defense hadn't even started, and you didn't know whether the defense would go short or long. And do we know anything about, was there a witness list that the defense, you know, that the defendant was the only witness or no surprise witnesses? I'm really sorry, Your Honor. I can't speak to that, so my apologies. I would, being that I have a short amount of time left, I'd like to skip to the harmlessness, because ultimately, even if the court is troubled, and frankly, by the lack of record, we might be troubled, too. However, this case can't move forward with habeas relief because any error here was harmless. And that is outlined squarely in black and white in the record. And I would like to point the court to just a few things that demonstrate that. I don't understand how that can be true, at least with a couple of these counts, because all you have is the word of the defendant versus the word of his wife or ex-wife. And then you have Cooper to add whatever he's going to add. Respectfully, I disagree that that's the only testimony that supports the kidnapping charge. And if I could outline what that is. Yes, there is the testimony of the victim, Donna. There was also the testimony of her 9-year-old son, who was also a victim, but that doesn't make their testimony unimportant. There was also testimony from Willie Whitfield, who was a witness up in the apartment building. He witnessed Mr. Moritz drag Donna out of the apartment by her hair with a gun and taken down the hallway. He also had a gun going in, didn't he, with the gun in his hand chasing her? That was the evidence from Donna, yes. And Whitfield, yes. The dispute about whether she had the gun, I mean, wasn't that his contention, it was her gun? Yes, but even Mr. Moritz admitted that he had possession of the gun at that point, going into Mr. Whitfield's apartment. And if I could just, I'm two seconds away from time. Let's assume that that helped you on the kidnapping charge. Most of the weapons charges relate to the firing of the gun in the car, do they not? Allegedly pointing the gun at her and then the discharge of the weapon. No, Your Honor, they do not. And if I can answer your question. The crimes that Mr. Moritz was convicted of was the felonious assault of Donna and the linked felony firearms charge. That happened up in the apartment. The felonious assault with Mr. Whitfield, that also happened up in the apartment. One of the felony firearm charges was possessing the gun at the time of the kidnapping. Yes. If the kidnapping is dragging her out to the car and putting her in the car, Cooper clearly witnessed that and testified to that. When it comes to... Kidnapping doesn't end at the time that he tells her to leave the building and go to the car. No, it doesn't. It doesn't, but... The other part of felony firearm was possessing the gun when assaulting her. The assault occurred in the car, right? The assault that he was convicted of, Your Honor, occurred in the apartment. And just to point out... How do we know that from the record that we have? We don't even have the charging instrument in this habeas case. From the record that we have, what I can point you to is the... I don't have the page ID numbers, but it's the prosecutor's opening and the prosecutor's closing. She outlined every single count in both statements. And she outlined what evidence supported every single count. So the assault that happened in the car with the gun, that was actually going to the assault with intent to murder that he was ultimately acquitted of. So we do have the jury instructions. They don't make it clear. I've read those. We don't have the charging instrument, so we have to look at the opening and the closing. Correct. Okay, fair enough. Good afternoon, Your Honors. I'm Margaret Rabin from Detroit on behalf of Connie George Moritz. My argument is essentially that the district, the habeas court got it right and got it right for the right reasons. This was an absolute violation of Mr. Moritz's Confrontation Clause rights. And I think it's important to keep that in mind. This is not about docket efficiency. This is not about moving a trial along. I think the record is absolutely clear that that trial was moving right along. In fact, the judge commented several times during the trial to the jurors and to the attorneys, we're making good progress here. Ms. Rabin, you might be right if we were looking at this de novo, but you know that we're constrained by AEDPA. I do. So if we're looking at it, your claim is this is either contrary to or an unreasonable application of. Unreasonable application. Now, the case that you primarily rely upon is Barber, right? Yes. Barber deals, as I understand it, with a person, a witness, who was discovered to be unavailable long before a trial started. Certainly before the trial started. And I believe that all the other follow-along cases, of which there are only two or three that anybody's citing, all involve unavailability that was discovered before the trial, right? Yes. So what case do you cite us to that establishes that the same attendant obligations that apply to the prosecutor before trial also apply to the prosecutor during the trial? I don't have a case that addresses that issue specifically, but I think it's a false issue, Judge McKee, because the issue of confrontation clause rights often arises in the middle of trial when witnesses don't show up or. . . You say it frequently arises. How is it that at least Judge McKee is saying that we don't have any cases right on it? I have a thought about that, and that is that the trial judge resolves the issue in an appropriate way during the trial. Does the trial judge always do things right so nobody ever appeals? I'm sorry. With all due respect to both of my colleagues. I do a lot of trial work, and I think that's a little stronger than I would want to say, but I think the point is that it will never get to the Court of Appeals for your review if the trial court has appropriately resolved it with a short adjournment. In this case, we were talking about the next day. We were not talking about a week, a month. And the next county over, so it's not. . . It's 39 miles. All that may be true, but going back to AEDPA, in the Supreme Court cases, they all say very clearly that the law has to be clearly established by the Supreme Court. It's not by what the convention is among trial judges and district judges or courts of appeals. The Supreme Court's got to say it in order for it to be clearly established. So where do they say it? What is clearly established is that the prosecution may not present recorded testimony until the prosecutor of a witness deemed unavailable, unless the prosecutor has made good faith efforts, whatever that might be given the fact scenario. And that's what's missing here. But no, that's the whole point. We never get to that because the judge said, in effect, we are going forward. Isn't that sort of an intervening cause to cut the prosecutor's opportunity? You don't know? I'm sorry, but it seems to me that it's my understanding, and far less than my colleagues have, that appellate courts tend to give a great deal of deference to the judge's control of his or her own docket. You know, very short periods of time between a capital charge and a trial, kind of awful. But it just seems to me when the charge says, no, we're going to move this case along, the prosecutor can go, but, but, but, but, we can get them here tomorrow. And the judge says, no, I'm going to move this case along. And I think Judge McKeek's point is these cases deal with the failure of the prosecutor to undertake diligent and due efforts. But here, all we have is a judge declaring logistical problems, we're going to go ahead today, even though he could be here tomorrow. I think this would be a very different case, and I probably couldn't be standing here. If this trial prosecutor, who presumably knows what she has to do, if there's a missing witness, what sort of record she has to create in order to withstand further review. All of your argument presumes that the barber holding of what happens before trial applies equally during trial. And you might be right, but where do we find that? I guess, Your Honor, I can't think of any principled reason why it wouldn't apply. Because you have a group of citizens that are impaneled in a jury box. You don't want them wandering out and around the streets while you're waiting to find a witness. The judge has a trial docket, he's got a bunch of cases presumably lined up behind this one. There are reasons why we defer to trial judges. We don't know, oftentimes we don't even know why they exercised the discretion that they did to keep a trial moving in accordance with a certain schedule. In this trial, they were all going to be back the next day for this trial anyway. We also don't have the unusual, I think in my experience, the somewhat unusual circumstance where the lawyer actually took the opportunity at a preliminary examination to cross-examine. Now that may be the way it's done in Michigan. It's kind of a rare and unusual situation, in my experience, a small corner of northwest Ohio where I sit. Usually the defense lawyer, that's the last thing the defense lawyer wants to do is cross-examine, even though there's the opportunity. And doesn't the fact that, in fact, there was cross-examination at an earlier stage, I mean, it just seems to me quite candidly, or at least tell me why I'm wrong, that where you have a situation where there was cross-examination of some sort, shouldn't possibly the burden be on the petitioner to say, by the way, this is what my lawyer would have cross-examined him on at trial, because of this, that, and the other thing? There was a preliminary exam. There were two state witnesses at the preliminary exam, Mr. Cooper, the missing witness at trial, and Donna Moritz, the complainant. They testified at the preliminary exam, and they were cross-examined. At trial, as sister counsel has indicated, there were several other witnesses. There were the two teenage children, there was Donna Moritz, there would have been Carl Cooper, and then there were the witnesses for the counts that Mr. Cooper had no information about. So was the preliminary exam transcript a full and fair opportunity to cross-examine? No, because by the time you get to trial, you have all these other witnesses who were in the car with Carl Cooper, and Mr. Moritz, and Donna Moritz, and who are testifying to other things that happen in the car that never come out at the preliminary exam, because they're not called to testify. So I cannot concede. Are there other things that came up during the trial? You're focusing on what happened in the car, so we'll stick with that for a minute. Are there other things that came up during the trial that didn't come up in the preliminary exam about what happened in the car that your client disputes? Anything that Cooper had to say, he already had the opportunity to cross-examine on that, right? Well, he wasn't, but he wasn't cross-examined. Well, he was cross-examined, so the only thing that you could say is, well, I would have asked him more questions about other things that were not the subject of the direct examination. Am I right about that? If Mr. Cooper had testified at trial, the prosecutor was going to direct examine him on everything that all of the prior witnesses had testified happened into the car. We don't know that. It's not in the record. You might be right. It's not in the record. Well, she did. That's what she did do. She can't do that. He wasn't there. She can only read in the questions she asked during the preliminary exam. She can't ask him any other questions. He's not there. You're assuming the prosecutor would have gone into other things with Cooper, and then you would have had an opportunity to cross-examine on that. I don't see how you could possibly be prejudiced by that, because it didn't happen. Now, you could say, notwithstanding what the direct examination was on the preliminary exam, I wanted them to see his face, because you could see that he was lying when he gave that testimony during the preliminary exam. You could make that argument. Is that part of your argument? It would be part of the argument. That was the argument made by defense counsel. Well, that actually is the argument he made in the pleadings, if I remember right. Now you're going beyond that and saying it's not just we had a right to have him see his shifty eyes when he testified, but you're saying we would have asked him more questions. I don't know that this really even gets as an official part of our evaluation here, but what other questions would you have asked him about that would have assisted in the defense? What I look at with Mr. Cooper's preliminary exam testimony was that his testimony touched on many more than three counts. He testified. However many counts that it touched upon, there was the opportunity to ask him questions about that in the cross-examination. I don't think not on the counts. That would depend upon what the charges were in the complaint. And I understand there's no grand jury in Michigan, but there's a complaint and an indictment. So I can see the answer to my earlier question. Well, look, if the complaint simply had one count and the indictment has multiple counts, well, then it's almost reciprocal that had those counts been spread before the defense counsel and the defense attorney in the preliminary examination, then indeed he might have gone into them or she. Now, their trial, all we have is cross-examination on one count instead of the multiple counts. Therefore, Your Honor, it does make a difference. That's all the burden that the petitioner has to show in terms of what else he might have done had the witness been called. By my reckoning, there were 20 felony counts. Mr. Cooper testified as to facts going to 17 of those felony counts. How many were in the original complaint? Does the record show? I believe there were 20, although I have some memory that there might have been 21 and one eventually got booted out early. This isn't like my hypo where there was one count at the preliminary in the initial complaint and 20 down the road. There was a matchup. Actually, there was some version of that because originally this case was charged, part of it was charged in Macomb County and part of it was charged in Wayne County because as they traveled, they moved over county lines. And Mr. Moritz was actually arraigned in both counties. And then the Wayne County case got dismissed in favor of the addition of the Wayne County counts as continuing offenses in the Macomb County case. And that probably makes no difference, but it was a complicated start to the case. It would have if the cross-examination occurred in the first one and not the second one. No, the cross-examination only occurred in the Macomb County case. What count was it that he was indicted for that he wasn't asked about during the preliminary exam where there was an opportunity to cross-examination that you think prejudiced him here? I can't answer that. This is my argument on prejudice. Mr. Cooper testified in the preliminary exam on 17 counts. Mr. Moritz was convicted of 1, 2, 3, 4, 5, 6, 7 of those counts. He was acquitted of 10 of those counts. So the evidence in this case certainly was not overwhelming. It was not all that persuasive. Let me stop you before you get too much further. You seem to be implying that in the preliminary exam, the prosecutor went through each of the various counts and only went through 17 out of 20 with Cooper. That's not what happened here. Mr. Cooper could not testify. There's no reference to the counts that Moritz was charged with in the direct, cross, or redirect examination of Cooper. They just simply ask him what happened. It's not tethered to any particular charge in an indictment at all. He just talks about everything that happened when he was with Moritz. Your Honor, my time has elapsed. So I'm trying to figure out how you can say that he was asked about 17 different felony accounts and not 3 when he's not asked about any felony account, except to say, please tell me what happened, what happened next, what happened next. Because I looked at the testimony, and then I looked at the charging document as to what specific charges he was charged with. Felony offense was charged. And I looked at Mr. Cooper's preliminary exam transcript testimony, and I found testimony in there that went to 17 of the 20 counts that he's bound over on. The fact that the prosecutor doesn't identify, doesn't flag the transcript... He was not asked about any of the counts that related to what happened in the Whitfield's apartment. Because, of course, he would have no... The home invasion, count 3. He wasn't there. That's right. So he can't be asked to testify about something he has no knowledge about. So how can that possibly be prejudicial? I'm not sure if the court... Does the court want me to argue prejudices to individual counts? I'm just trying to follow your argument. Okay. Judge Bott, can I ask just one last question, taking you back to what happened about the unavailability? Yes, sir. You seem to be, or we seem to be, faulting the prosecutor. And my question is, as I read what happened, the judge is kind of talking in both sides of his mouth. He's taking two parts. If the prosecutor had said, Your Honor, he was picked up by the Southgate police. We tried to get him here. He can't get here today. It'll have to be tomorrow. And you, Your Honor, have said that you intend to proceed. So I guess we'll have to use the transcript. Would that have solved the problem? That is, the prosecutor, in my hypothesis, says exactly what the judge says, and those are the efforts that were made. Is the problem that the judge never let the prosecutor talk? No, I don't think so, because I don't think finding out where a missing witness is is doing anything to get the witness there. But once the judge says, I intend to proceed, what's the prosecutor supposed to say? Your Honor, if you do that, the Sixth Circuit's going to overturn you seven years down the road, and we quit. What's he supposed to do? Well, anecdotally, I can say this judge had been on the bench for about four months at the time of this trial, and I truly do not think that he understood. Your Honor, let me tell you about the Supreme Court and Crawford. I'm not sure that Judge Switalski understood what he needed to do in this circumstance in order to create an appropriate record. I've forgotten on the record, once the judge said, we're going to go ahead with the exam, did the defense attorney object at that point? He was asked, did he want to say anything on the record, and in fact, he did make a statement on the record that is... In my reading of it, it's clear that he was dealing with a judge who'd made up his mind and he wasn't going to bully-rag the judge. You can waive constitutional rights, so what did the defense lawyer say? He said, and this is on page, probably page 1060, 1060 of the record, the defense attorney said, just for the record, Your Honor, I would object. Obviously, I think from the juror's standpoint, obviously part of their job is to check the appearance of the person when they are testifying to assess their credibility, body language, their demeanor on the stand. We don't have that in this case, so I would... That's good enough, so he objected. I just want to make a couple of brief points. We do seem to disagree about what Mr. Cooper actually testified to in his very brief preliminary examination testimony. Your Honor asked me about the instructions and whether or not the instructions bore out what counts applied to what facts, and what I would like to... I didn't ask you that. I told you I read the instructions and they don't go to specific acts. As a clarifying point, the assault with intent to murder, which is only what happened in the vehicle, the gunshots being fired, if the felonious assault, which he was convicted of, had been to those facts, had been to that action, then it would have been included, or the trial court would have instructed us to a lesser included offense. Felonious assault is a lesser included offense of assault with intent to murder. And that is not this case. Through the instructions read, there isn't anything called felonious assault. I'm sorry, assault with a dangerous weapon. It's the same charge. That's pointing the gun at Donna and firing it and hitting the daughter. Yes, correct. If that would have been the assault with a dangerous weapon, then it would have appeared in the instructions as a lesser included offense to assault with intent to murder. So that's the support for the point that the felonious assault, or excuse me, the assault with a deadly weapon actually occurred up in the Whitfield Department. So that being said, Cooper's testimony only occurred as to, and I don't want to belabor the numbers, but he testified to 13 different counts based on our count. And Mr. Moritz was only convicted of three of those counts. Were you asking us to follow a close enough rule or something? No. Somewhere in the pleadings it says that the only thing he testified to were counts for which he was acquitted. That cannot possibly be true. Do you agree with that? Yes. So we've got a situation where that defense does not. So then we go on and look at whether the law was clearly established and whether I suppose there was overwhelming evidence of the guilt for the counts for which he was convicted. Right? Anything else you want to say? All right. Thank you. The case will be submitted. Ms. Rabin, we see that you, have you been with this case all along?